UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION, COMM 2005-C6, COMMERCIAL MORTGAGE PASS THROUGH CERTIFICATES,<br><br>    Plaintiff,<br><br>vs.<br><br>PT. DUME SHOPPING CENTER, LLC, et al.,<br><br>    Defendants. | CASE NO. 5:16-cv-00044<br><br>["Canton Action"]<br><br>JUDGE SARA LIOI<br><br>**MEMORANDUM OPINION AND ORDER** |
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION, COMM 2005-C6, COMMERCIAL MORTGAGE PASS THROUGH CERTIFICATES,<br><br>    Plaintiff,<br><br>vs.<br><br>PT. DUME SHOPPING CENTER, LLC,<br><br>    Defendant. | CASE NO. 4:16-cv-00048<br><br>["Boardman Action"] |
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION, COMM 2005-C6, COMMERCIAL MORTGAGE PASS THROUGH CERTIFICATES,<br><br>    Plaintiff,<br><br>vs.<br><br>PT. DUME SHOPPING CENTER, LLC,<br><br>    Defendant. | CASE NO. 1:16-cv-00050<br><br>["Mentor Action"] |

Before the Court is the motion for summary judgment (Doc. No. 63[1] ["MSJ"]) filed in the Canton Action by Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Deutsche Mortgage & Asset Receiving Corporation, COMM 2005-C6, Commercial Mortgage Pass Through Certificates ("Wells Fargo" or "plaintiff") against defendants Jerry L. Preston, as Trustee of the Preston Family Trust dated January 15, 1999 ("Preston Trust"), and Jerry L. Preston, individually ("Preston") (collectively, the "Guarantors"). The Guarantors filed a memorandum in opposition (Doc. No. 69 ["Opp'n"])[2], and Wells Fargo filed a reply (Doc. No. 70 ["Reply"]). For the reasons set forth herein, Wells Fargo's motion is granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

On January 8, 2016, Wells Fargo commenced the above-captioned foreclosure actions against Pt. Dume and the Guarantors to enforce their obligations under various documents executed by Wells Fargo's predecessor in interest relating to a 2005 loan to Pt. Dume. The three actions were consolidated on March 25, 2016.

On April 21, 2016, by stipulated order, a receiver was appointed. (Doc. No. 27.) On July 25, 2016, the Court entered a stipulated Consent Judgment in Mortgage Foreclosure, resolving Counts I and III in both the Boardman Action and the Mentor Action, as well as Counts I and II of the Canton Action, and entering judgment in mortgage foreclosure in all three actions in favor of Wells Fargo and against Pt. Dume. (Doc. No. 36 ("Consent Judgment").) On January 5, 2017, after entering an Order of Confirmation of Sales and Distribution (Doc. No. 45), the Court granted in part Wells Fargo's motion for judgment on the pleadings consistent with the Consent Judgment

---

[1] The docket numbers refer only to the Canton Action, although most of the procedural actions described herein also occurred in the other two actions.

[2] Defendant Pt. Dume Shopping Center, LLC ("Pt. Dume") joined in the opposition, although Wells Fargo is seeking summary judgment only as to the Guarantors.

2

and the Order of Confirmation, denying the motion only as to Counts IV and V of the complaint in the Canton Action. (*See* Doc. No. 46.) The motion for judgment on the pleadings had not sought judgment as to Counts III or VI of the Canton Action. Counts IV, V, and VI of the Canton Action are the subject of the instant dispositive motion.[3]

## II. FACTUAL BACKGROUND [4]

**A.      The Canton Loan**

On May 9, 2005, PNC Bank, N.A. (the "Lender")[5] made a loan to Pt. Dume in the principal amount of $4,175,000.00 (the "Loan"), pursuant to the terms and conditions of a *Promissory Note* (the "Note").[6] To secure payment of the Note, Pt. Dume executed the *Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing* (the "Mortgage"), thereby conveying to the Lender a leasehold interest in the mortgaged property (the "Canton Premises").[7]

To further secure payment of the Loan, Pt. Dume also executed the *Assignment of Leases and Rents* (the "Assignment") in favor of the Lender.[8] Under the Assignment, Pt. Dume "absolutely and unconditionally assign[ed] to Lender all of Borrower's right, title and interest in

---

[3] Each of the three cases included a claim for breach of the lockbox agreement. (Count II in the Boardman and Mentor Actions; Count III in the Canton Action.) This claim has not been the subject of any motion or consent judgment to date, and will remain for resolution at trial unless it is otherwise resolved prior to that time.

[4] The underlying facts are mostly undisputed since they are largely based on written documents that were authenticated by Preston during his deposition. (*See* Doc. No. 66, Deposition of Jerry L. Preston ("Preston Dep."), *passim*.) The dispute is largely related to interpretation of the guarantor portion(s) of the documents.

[5] Wells Fargo is the successor by assignment to PNC Bank, N.A. in connection with the Note and Mortgage at issue. (Complaint, Doc. No. 1 ["Compl."] ¶ 2.)

[6] A copy of the Note is attached to Wells Fargo's motion as Exhibit A. (Doc. No. 63-4.)

[7] A copy of the Mortgage is attached to Wells Fargo's motion as Exhibit B. (Doc. No. 63-5.)

[8] A copy of the Assignment is attached to Wells Fargo's motion as Exhibit D. (Doc. No. 63-7.)

all current and future Leases and Rents . . . ." (Assignment at 1394[9] ¶ 3.) The Assignment further provides, in relevant part:

> 4. <u>Performance of Leases</u>. With respect to all Leases, Borrower shall: . . . (ii) not do or permit to be done anything to impair the value of any of the Leases as security for the Debt[.]
>
> * * *
>
> 5. <u>Acts Requiring Lender's Approval</u>.
>
> (a) Without obtaining Lender's prior written approval (which shall not be unreasonably withheld), Borrower shall not: . . . (iv) other than Residential Leases, materially alter, modify, change the terms of, cancel, terminate or accept a surrender of any of the Leases[.]

(*Id.* at 1394-95 ¶¶ 4, 5.)

On May 9, 2005, Preston, individually and on behalf of the Preston Trust, executed a *Non-Recourse Indemnification Agreement* (the "Indemnification")[10] that provides, in relevant part:

> 2. <u>Indemnity</u>. INDEMNITOR HEREBY ASSUMES LIABILITY FOR AND AGREES TO PAY, PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS LENDER (AND ANY ASSIGNEE OR PURCHASER OF ALL OR ANY INTEREST IN THE NOTE AND THE SECURITY INSTRUMENT) FROM AND AGAINST ANY AND ALL LIABILITIES, OBLIGATIONS, LOSSES, DAMAGES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES), CAUSES OF ACTION, SUITS, CLAIMS, DEMANDS AND JUDGMENTS WHICH AT ANY TIME MAY BE IMPOSED UPON, INCURRED BY OR AWARDED AGAINST LENDER AND FOR WHICH BORROWER AT ANY TIME MAY BE PERSONALLY LIABLE PURSUANT TO THE NON-RECOURSE EXCEPTIONS (AS DEFINED IN PARAGRAPH 12 OF THE NOTE). EACH PERSON OR PARTY EXECUTING THIS INDEMNITY AGREES THAT THE LIABILITY HEREUNDER SHALL BE JOINT AND SEVERAL.

---

[9] All page number references herein are to the page identification number generated by the Court's electronic docketing system.

[10] A copy of the Indemnification is attached to Wells Fargo's motion as Exhibit E. (Doc. No. 63-8.)

(Indemnification at 1403 ¶ 2 (uppercase in original).) The Non-Recourse Exceptions referenced in paragraph 2 include, in relevant part:

> 12. <u>Exculpation</u>. Subject to the provisions of this Section, Borrower's liability under this Note, the Security Instrument or the Other Security Documents shall only extend to the Mortgaged Property and other collateral given to secure the Debt, and Lender shall not enforce such liability against any other asset, property or funds of Borrower; provided, however, the foregoing shall not:
>
> (a) impair the right of Lender to bring suit and obtain personal, recourse judgments against any person or entity (including Borrower) relating to any losses (including attorney's fees and court costs) sustained by Lender in connection with any fraud, intentional misrepresentation, waste, or misappropriation of tenant security deposits or rents collected more than one (1) month in advance by Borrower;
>
> * * *
>
> (e) impair the enforcement of the Assignment of Leases and Rents executed in connection herewith[.]

(Note at 1294-95 ¶ 12.)

All of the loan documents, and the Indemnification, were assigned to Wells Fargo via *Assignment of Loan Documents* (the "Canton Assignment").[11] The Note was also endorsed by the Lender to Wells Fargo by way of allonge. (*See* Note at 1301.) On September 4, 2007, Wells Fargo and Pt. Dume entered into the *First Amendment to Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixtures Filing* (the "Amended Mortgage").[12] Wells Fargo is the holder of the Note and Mortgage, as amended, and has physical possession of the Note. (*See* Consent Judgment at 806.)

---

[11] A copy of the Canton Assignment is attached to Wells Fargo's motion as Exhibit F. (Doc. No. 63-9.)

[12] A copy of the Amended Mortgage is attached to Wells Fargo's motion as Exhibit G. (Doc. No. 63-10.)

**B.     Petco Lease and its Termination**

On July 15, 2004, Tri-DB Pets LLC, which was Pt. Dume's predecessor in interest, entered into a *Lease Agreement* (the "Petco Lease")[13] with Petco Animal Supplies, Inc. ("Petco"), which was Petco Animal Supplies Stores, Inc.'s predecessor in interest. The Petco Lease was for approximately 22,009 square feet of retail space at the Canton Premises. The term of the lease was roughly fourteen (14) years,[14] and the annual rent started at $414,910.00, with escalating rent increases for years 6-10 and 11-14. (Petco Lease at 1438-39 ¶ 4(b); Preston Dep. at 1600-02.)

According to emails between Petco representatives, produced in response to a subpoena, Petco ceased operations at the Canton Premises on January 26, 2008, not even four (4) years into the 14-year lease. (*See* Doc. No. 69-2, Affidavit of Julie A. Douglas, Esq. ("Douglas Aff.") Ex. 3 at 2164.) Thereafter, although the Petco Lease permitted Petco to sublet the property, it could not find a tenant and the property sat vacant for years. (Petco Lease at 1454 ¶ 37; Douglas Aff. Ex. 3 at 2163.)[15] In late 2013 or early 2014, Preston was contacted by Leo Greco of Excess Space ("Greco"), on behalf of Petco, inquiring whether Pt. Dume would take a settlement to release Petco from the Petco Lease. (Preston Dep. at 1606-07.)

Ultimately, on February 19, 2014, Pt. Dume entered into a *Termination of Lease and Release Agreement* with Petco (the "Lease Termination"), thereby terminating Petco's commercial

---

[13] A copy of the Petco Lease is attached to Wells Fargo's motion as Exhibit I. (Doc. No. 63-12.)

[14] It is difficult to say precisely when the Petco Lease would have ended, since its "Term" is defined as beginning on the "Commencement Date" and ending on "the last day of the month following fourteen (14) full years after the Commencement Date." (Petco Lease at 1438.) The "Commencement Date" is defined as 90 days after the "Acquisition Date," which is defined as "the first Monday after Landlord's acquisition of the Premises[.]" (*Id.*) Wells Fargo claims the term would have ended on October 1, 2018. (MSJ at 1270.) Defendants have not disputed that date.

[15] Christopher G. Hamilton ("Hamilton"), who was employed by C-III Asset Management, a company that manages commercial mortgage-backed securities and who serviced the Note at issue here, testified that annual inspections of the Canton Premises were conducted, each followed by a report to Wells Fargo. Therefore, it seems that Wells Fargo would have been aware of the vacancy from 2008 to 2014. (Doc. No. 67, Deposition of Christopher G. Hamilton ("Hamilton Dep.") at 1727.)

lease for the retail space at the Canton Premises.[16] Wells Fargo claims there was more than $1.9 million in future rents to be paid by Petco at the time of the Lease Termination. (MSJ at 1270.)[17]

In exchange for being released from its lease, Petco agreed to pay Pt. Dume a lump sum of $1 million less Petco's prorated rent for February 2014, which amounted to a payment of $961,966.60 (the "buyout"). (Lease Termination at 1430 ¶ 2.) This buyout was accepted "in full satisfaction of all amounts due to [Pt. Dume]" in connection with the remaining term of the Petco Lease. (*Id.*) Preston confirmed during his deposition that he received the buyout payment from Petco. (Preston Dep. at 1633.)

Despite Pt. Dume's contractual obligation to obtain prior written approval from Wells Fargo before modifying any leases, no such approval was sought or obtained with respect to the Petco Lease Termination. (*Id.* at 1624-25; *see also* Doc. No. 63-14, Defs.' Responses to Pl.'s First Set of Requests for Admission ["RFA Responses"] at 1532 No. 2.) In fact, the Lease Termination included the following provision, which contained three false representations with respect to Pt. Dume's obligations:

> 4. <u>Indemnification</u>. Landlord [Pt. Dume] hereby covenants, warrants and represents to Tenant [Petco] that (i) there is no trust deed or mortgage encumbering the property of which the Premises is a part, (ii) that there is no lender with any lien on the property of which the Premises is a part who may have an interest in the termination of the Lease, (iii) that no lender's consent or other third parties' prior written consent to the within termination of the Lease are required before terminating the Lease . . . .

---

[16] A copy of the Lease Termination is attached to Wells Fargo's motion as Exhibit H. (Doc. No. 63-11.)

[17] This amount is not discernible from the record. Although defendants have not specifically disputed the amount, Wells Fargo appears to acknowledge that it would be an element of damages that would need to be proven, should judgment be entered in favor of Wells Fargo. (*See* Doc. No. 63-2, Proposed Order at 1283.) The Court repeats the amount represented in the motion merely to provide some context as to the scope of possible injury to Wells Fargo.

(Lease Termination at 1431 ¶ 4.) Preston admitted during his deposition that these three express warranties were not accurate. (Preston Dep. at 1629-33.) Preston also inaccurately stated in an email to Greco that he did not require the lender's consent before agreeing to terminate the Petco Lease prior to its expiration. (*See* Doc. No. 63-15, Email chain at 1537.) During his deposition, Preston admitted that this statement was not accurate. (Preston Dep. at 1623-26.)

Wells Fargo is also of the view that paragraph 3 of the Assignment[18] required Pt. Dume to remit funds to Wells Fargo that had been generated by the Canton Premises and, therefore, the Petco buyout should have been given to Wells Fargo; but it was not. Nor was the buyout payment reported on the operating statement for the relevant period, as also admitted by Preston, despite provisions in both the Mortgage and the Indemnification that accurate financial statements be supplied to the lender. (Preston Dep. at 1633-35, referencing deposition exhibit 14 [Doc. No. 68-14]; *see also* Mortgage at 1316-17 ¶ 14; Indemnification at 1406 ¶ 5.) It was Preston's view that the buyout was not rent and, therefore, did not need to be remitted or reported. (Preston Dep. at 1637.) During his deposition, Preston testified that, after termination of the Petco Lease, Pt. Dume paid all the rent for the Canton Premises to Wells Fargo, as it had always done, even though it actually received no rent payment from Petco. (*Id*. at 1637; Doc. No. 63-17.)

**C.    Borrower's Default**

Pt. Dume defaulted on its obligations under the Loan Documents by, *inter alia*, failing to pay the balance of the outstanding indebtedness by the June 1, 2015 maturity date. (*See* Consent Judgment.) This Court fixed the amount due under the Note and Mortgage at $3,823,792.45 as of

---

[18] This paragraph provides, in relevant part: "Borrower [Pt. Dume] does hereby absolutely and unconditionally assign to Lender [Wells Fargo] all of Borrower's right, title and interest in all current and future Leases and Rents, it being intended by Borrower that this Assignment constitutes a present, absolute and unconditional assignment and not an assignment for additional security only. . . ." (Assignment at 1394 ¶ 3.)

December 31, 2015, plus per diem interest and default interest at rates of $520.20 and $371.57, respectively, from December 31, 2015 until the foreclosure sale of the mortgaged property, together with interest, costs, ongoing attorneys' fees, plus pre-judgment and post-judgment interest. (*Id.* at 806-07.) The mortgaged property was sold at public foreclosure by the receiver to Wells Fargo for a credit bid in the amount of $1,400,000.00 against plaintiff's judgment. (Doc. No. 45 at 1066.) On January 5, 2017, this Court confirmed and approved that foreclosure sale. (*Id.* at 1067.)

Preston testified that, even after the Loan was in default, Pt. Dume continued to search for a tenant to take Petco's place. In September 2015, it secured BargMax as a new tenant for the Canton Premises, with a five and a half (5½) year lease at an annual rent of $143,000.00, beginning in December 2015, followed by three-year extensions with escalating rents. (Preston Dep. at 1641, 1646-48; Doc. No. 68-17.)

### III. DISCUSSION

**A. Legal Standard**

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials

cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (once the moving party meets its initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial).

**B.     Analysis**

    **1.     Count IV (Breach of Assignment for Termination Payment) and Count V (Breach of Assignment for Loss of Property Value)**

The parties agree that, to establish a breach of contract under Ohio law, "a plaintiff must prove (1) the existence of a contract, . . ; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *Kirkland v. St. Elizabeth Hosp. Med. Ctr.*, 34 F. App'x 174, 178 (6th Cir. 2002) (citing *Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio Ct. App. 1998)); *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citation omitted).

There is no dispute over the first two elements. The parties disagree only as to the third element -- whether there was a breach by Pt. Dume -- and, if there was a breach, whether the Guarantors are liable for that breach.[19]

Wells Fargo argues that it is entitled to summary judgment because there is no genuine issue of material fact regarding Pt. Dume's breach of the Assignment due to its failure to obtain Wells Fargo's prior consent to the Petco Termination and its additional failure to remit the buyout payment to Wells Fargo.[20] It further argues that there is no genuine issue of material fact regarding

---

[19] If these issues are decided in Wells Fargo's favor, there is no question that damages will need to be determined at a hearing. The Court notes that some of Guarantors' arguments are directed more toward Wells Fargo's ability (or not) to prove damages. For example, Guarantors are of the view that diminution of the value of the Canton Premises cannot be attributed to any breach by Pt. Dume, who had no control over the actions of Petco. (*See* Opp'n at 2137.)

[20] Guarantors have not addressed Wells Fargo's argument regarding the buyout payment and, therefore, have waived any possible counter-argument.

the Guarantors' personal liability under the Indemnification, and due to the "myriad false statements, mischaracterizations, and concealments [d]efendants made in connection with the breaches." (MSJ at 1272-73.)

Guarantors offer no substantive argument, but merely assert in conclusory fashion that there are issues of fact for a fact-finder to determine. (Opp'n at 2135.) They devote the bulk of their opposition brief to assertions that Wells Fargo cannot "prove that [any] breach satisfies a narrow condition for invoking Preston and the Trust's personal guaranties under the Non-Recourse Agreement and Paragraph 12 of the Canton Note." (*Id.*) They base this argument on the fact that "there has been no judgment rendered against Plaintiff as a result of Pt. Dume's default relative to the Canton Note whereby Plaintiff would have sustained any losses." (*Id.* at 2136, citing Hamilton Dep. at 1716, 1717, 1729-30.) At the very least, Guarantors argue, there is a question of fact "whether any losses have been imposed upon, incurred by or awarded against Plaintiff as a result of Pt. Dume's termination of the Petco Lease." (*Id.* at 2137, internal quotation marks omitted.)

The Court does not disagree that Wells Fargo will have the burden of establishing damages resulting from any breach, in other words, to establish the fourth element of a breach of contract claim. Even so, the Court is able to rule as a matter of law, that Pt. Dume breached the contracts in the two ways identified by Wells Fargo. In fact, in its reply brief, Wells Fargo very effectively marshalled the evidence supporting this conclusion (all of which was also outlined above by the Court):

1. The Parties entered into a number of valid contracts, including the Assignment of Leases and Rents (footnote omitted) and the Non-Recourse Indemnification Agreement (*See* Pl.'s Memo, Doc. 63-1, § II, at 1266-72);

2. Plaintiff performed its obligations under those contracts (*See id*. at 1273-74);

3. The Assignment of Leases and Rents prohibits Defendants from terminating or materially altering any commercial lease without Plaintiff's prior written consent (*See* Assignment of Leases and Rents, Doc. No. 63-7, ¶ 5(a)(iv), at 1394-95);

4. On February 19, 2014, Borrower [Pt. Dume], acting by and through Defendant Preston, agreed to terminate Petco's commercial lease for retail space on the Mortgaged Premises, thus releasing Petco from its obligation to continue making rental payments through October, 2018 in exchange for a $961,966.60 buyout payment and without first notifying Plaintiff or securing its prior consent (Pl.'s Memo, Doc No. 63-1, at 1269-70, 1274);

5. The Assignment of Leases and Rents grants Plaintiff an absolute and unconditional assignment of Borrower's interest in all current and future leases of the Mortgaged Premises "TOGETHER WITH all rents (including, without limitation, percentage rents), income, issues, revenues, proceeds and profits arising from the Leases and all rents, income, issues, revenues, proceeds and profits … from the use, enjoyment and occupancy of the Mortgaged Property" (Doc. No. 63-7, at 1393);

6. Defendants did not remit the $961,966.60 buyout payment to Plaintiff (*See* Pl.'s Memo, Doc. No. 63-1, at 1271, 1274-75);

7. Pursuant to the Non-Recourse Indemnification Agreement, Guarantor Defendants assumed liability and agreed to pay Plaintiff for, *inter alia*, any losses, costs or damages incurred by Plaintiff for which Borrower and/or Guarantor Defendants may be personally liable pursuant to the Non-Recourse Exceptions in Paragraph 12 of the Note (*See* Doc. No. 63-8, ¶ 2, at 1403);

8. The Non-Recourse Exceptions provide, in turn, that Guarantor Defendants may be held personally liable for any losses (including attorneys' fees and costs) "***in connection with*** any fraud, intentional misrepresentation, waste, or misappropriation of tenant security deposits or rents collected more than one (1) month in advance by Borrower (Note, Doc. No. 63-4, ¶ 12, at 1294);

9. The Petco Termination of Lease Agreement included false representations that there was no mortgage encumbering the Petco Property, that no lender had an interest in the termination of the lease, and that Borrower did not require lender's consent in order to terminate the lease (*See* Pl.'s Memo, Doc. No. 63-1, at 1271-72, 1275-76);

10. In response to a direct question from Lou Greco, Defendant Preston stated falsely that he did not require Lender's consent before agreeing to terminate the Petco Lease (*See id.* at 1271, 1276);

11. The 2014 Petco-Canton Operating Statement prepared by Defendant Preston and delivered to Plaintiff omitted any reference to the $961,966.60 Petco buyout payment (*See id.* at 1271-72); and

12. The eventual replacement tenant (BargMax) paid more than $270,000 less per year to rent the Canton Premises than Petco would have been obligated to pay had Borrower, acting by and through Defendant Preston, not agreed to terminate the lease without Plaintiff's prior consent (*See id.* 1270 n. 13, 1277).

(Reply at 2223-24, numbering added.)

The Guarantors' argument that a "judgment" is required before liability may be imposed upon them finds no basis in the language of the relevant contracts, as supported by Nos. 7 and 8 in the list above. Their additional argument that they cannot be personally liable because Petco wanted a release from its lease and made its own decision to cease operations is equally unavailing in the face of the clear contract language.[21]

Wells Fargo has established that Pt. Dume breached the Assignment by terminating and/or materially altering the Petco Lease without Wells Fargo's consent, by accepting a buyout of the Petco Lease without remitting the buyout payment to Wells Fargo, and by granting a new lease to a tenant that paid considerably lower rent than Petco had been paying, all resulting in damage to Wells Fargo's interest in the Canton Premises. Wells Fargo has further established that, under the Indemnification and the Non-Recourse Exceptions in Paragraph 12 of the Note, the Guarantors promised to be personally liable for losses, damages, and costs incurred by Wells Fargo. The fact that the amount of those damages has yet to be determined does not preclude summary judgment on liability and the same will be granted in favor of Wells Fargo on Counts IV and V of the complaint.

### 2. Count VI (Fraud and Misrepresentation)

To state a claim for fraud under Ohio law, Wells Fargo must establish

---

[21] Had Petco ceased operations and stopped paying rent to Pt. Dume without being granted a lease termination, that might have been the basis of a lawsuit between Pt. Dume and Petco. But the Guarantors' liability arises from the contracts before the Court and has nothing to do with Petco's actions.

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citations and internal quotation marks omitted).

Wells Fargo asserts that the Guarantors are personally liable for Pt. Dume's breaches "due to the myriad false statements, misrepresentations, and intentional omissions Defendants made regarding the Lease Termination Agreement and buyout payment." (MSJ at 1275.) It points to the provision in the Indemnification whereby Pt. Dume -- and by extension, the Guarantors -- are personally liable for any losses sustained by Wells Fargo "in connection with any fraud, intentional misrepresentation or misappropriation of tenant security deposits or rents collected more than one (1) month in advance by [Pt. Dume]." (MSJ at 1275, citing Note ¶ 12.)

Wells Fargo notes that the Lease Termination contained the following three false statements: (1) that there was no trust deed or mortgage encumbering the Canton Premises; (2) that there was no lender with any lien on the Canton Premises who may have an interest in terminating the lease; and, (3) that no lender's consent was required prior to termination of the lease. (*Id.* at 1278, citing Lease Termination ¶ 4; *see also* Preston Dep. at 1629-33.) Preston also falsely stated in an email to Greco that he needed no lender approval prior to terminating the lease. (Preston Dep. Ex. 12.) Finally, Preston admitted that the 2014 operating statement regarding the Petco Lease did not reflect the buyout payment (Preston Dep. at 1635 and Ex. 14), which Wells Fargo characterizes as concealment in the face of clear obligations, in both the Mortgage and the

Indemnification, that Pt. Dume submit complete and accurate financial statements in connection with the loan. (MSJ at 1278-79, citing Mortgage ¶ 14 and Indemnification ¶ 5.)

As properly pointed out by the Guarantors, "'[t]he Ohio Supreme Court has held that a party cannot maintain an action for fraud when the fraudulent representations were not made to him to induce him to act upon them in any matter affecting his own interest.'" (Opp'n at 2139, quoting *Sooy v. Ross Incineration Servs., Inc.*, No. 98CA007031, 1999 WL 975112, at *10 (Ohio Ct. App. Oct. 20, 1999) (further citation omitted).) "'Accordingly, a plaintiff claiming that a third party relied on a misrepresentation made by the defendant and that the plaintiff suffered injury thereby does not state a valid cause of action for fraud.'" (*Id.* (further citation omitted).)

Here, even assuming for the sake of argument that the Guarantors are responsible for any fraudulent statements made by Pt. Dume, those statements were made to Petco, not to Wells Fargo. Although Petco might, arguably, have a viable fraud claim (or defense) under these facts, Wells Fargo does not. To that extent, Wells Fargo's motion with respect to Count VI is denied.

Wells Fargo also claims that Pt. Dume "violated the Loan Documents, . . . by refusing to disclose the [buyout payment], and further concealed this payment through the misrepresentations and omissions made by Defendant to Plaintiff in Defendant's year end 2014 Operating Statement." (Compl. ¶ 63.) Based on this nondisclosure and concealment, Wells Fargo attempts to state a separate fraud claim and to hold the Guarantors liable. In opposition, the Guarantors argue that there is no viable fraud claim, but, at the very least, there are factual disputes as to whether Pt. Dume misrepresented or actively concealed the fact of the Petco lease termination and/or the buyout payment. (Opp'n at 2140.) The Court accepts neither party's argument. Rather, Wells Fargo's motion with respect to this issue must be denied for a different reason.

Wells Fargo is essentially attempting to hold the Guarantors liable in tort (*i.e.*, for fraud) due to Pt. Dume's failure to honor its contract obligations. "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citing *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976)). "A party can bring a fraud claim and breach of contract claim in the same action, as long as there is a duty owed by the breaching party that is separate from the breach of contract claim." *Strategy Grp. for Media, Inc. v. Lowden*, No. 12 CAE 03 0016, 2013 WL 1343614, at * 4 (Ohio Ct. App. Mar. 21, 2013). There is no separate duty here. Accordingly, as to this aspect of Wells Fargo's claim, summary judgment is also precluded.

Wells Fargo's motion for summary judgment on Count VI is denied and that count is dismissed.

## IV. CONCLUSION

For the reasons set forth herein, Wells Fargo's motion for summary judgment (Doc. No. 63) is granted with respect to liability on Counts IV and V of the Canton Action; the motion is denied with respect to Count VI, which is dismissed. Count III of the Canton Action (and Count II of the Boardman and Mentor Actions), as well as damages, remain for determination at trial.

**IT IS SO ORDERED**.

Dated: July 3, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**